## HARRIS I. CARPENTER *vs.* CHARLES E. CARPENTER.

A testator directed his executors within two years after his death to invest the sum of $5,000 "in such stocks or other productive property as they may deem advisable, in their names as executors," for the benefit of his grandson, the trust fund to be paid over to the grandson when twenty-five years of age.

The executors, within the time limited, opened an account in their books in which they charged themselves as trustees, and credited the grandson with $5,000. They invested this sum in three United States 7-30 coupon bonds, and two coupon bonds of the State of Rhode Island. These bonds they put into an envelope, labelled "Investment of five thousand dollars for" the grandson, with the date of the purchase, put this envelope into a tin box, and put the tin box into the vault of a bank in Providence.

*Held*, that by these acts of the executors the trust for the grandson was properly and legally constituted.

The bank vault was robbed and the bonds lost. Subsequently the executors, by giving indemnity, obtained through an agent, whom they had reason to believe honest, the issue of new United States bonds in place of those stolen. The agent appropriated the bonds, and but a portion of their value could be recovered.

*Held*, that the executors or trustees were not liable for the loss caused either by the robbery of the vault or by the theft of the agent.

In managing trust property, a trustee must use as much care as prudent men ordinarily adopt in their own business, — more cannot be required of him.

The trustees deposited in a savings bank the money recovered from the agent.

*Held*, that this investment complied with the directions of the will.

BILL IN EQUITY for an account and to obtain payment of a trust fund. The facts involved are stated in the opinion of the court.

*Edwin Metcalf*, for the complainant, contended:

1. The executors have failed to comply with the directions of the will. They neglected to invest in their own names. The loss is wholly due to this neglect. It ought, therefore, to fall on them, not on the plaintiff. No case has yet been found in which the exact meaning of the phrase, "invest in their own names as executors," has been defined. The plaintiff submits that it can have but one meaning, and must be literally obeyed. This alone accounts for its frequent use in approved forms. Hayes & Jarman's Forms of Wills, pp. 128, 133, 136, 189, 195, 197, 234, *et sq.* The books are full of *dicta* confirming the doctrine of literal compliance with a testator's directions: "When the will directs what executors are to do, an executor who proves the will must do as directed." 3 Williams on Executors, 1796. "If there are directions in the instrument of trust as to the time, manner, and kind of investment, the trustees must follow the direction and power so given them." 1 Perry on Trusts, § 452.

" Any direction in the trust instrument as to the particular mode and nature of the investment, must be carried out as far as possible." Hill on Trustees, 368. " A trustee is bound to use his legal dominion for those purposes, and those only, which were contemplated by the grantor." Adams' Equity, 55. A trustee, directed to invest in .England, chose to invest in this country. Held a breach of trust. *Contee* v. *Dawson*, 2 Bland, 264. Such change is permitted only when assented to by all parties in interest. *Burrill* v. *Sheil*, 2 Barb. S. C. 457, 469. Trustees are held liable for mere neglect to invest when directed to do so. *Gilman* v. *Gilman*, 2 Lans. 1, 6. So also for investing in insecure railroad stocks, when directed to invest in " good, secure, and profitable stocks or other securities." *Ihmsen's Appeal*, 43 Pa. St. 431. And, for investing in the United States loan when directed to invest in " bank stocks, or land." *Banister* v. *M'Kenzie*, 6 Munf. 447. So, where the investment is changed without the the consent of the party with whose consent a change is authorized. *Kellaway* v. *Johnson*, 5 Beav. 319. So when trustees, directed to invest in real estate mortgages, bought real estate. *MacGregor* v. *MacGregor*, 9 Iowa, 65, 81.

2. If, however, the original investment can be upheld, the surviving executor must be held to reasonable diligence in its care and accumulation. Has he been diligent ? The plaintiff submits, that upon the facts he is justified in claiming : *a.* That the executors did not use reasonable care in making the deposit in bank. They ought to have adopted some method of identifying the bonds as their property, and rendering them valueless to the thief. *b.* They were acting beyond the fair scope of their powers as trustees, when they gave to an attorney in fact authority to receive the $3,000 of the United States government in a form that permitted and invited a second theft. This loss, in justice, should be theirs. *c.* None of their dealings with this attorney show diligence. A considerable sum is expended out of the fund for life insurance, that apparently yields nothing, though the defendant fails to enter this in his account. The defendant, in his evidence, shows these payments were made in a transaction which, if legal, was highly improper for a trustee to be concerned in. *d.* No effort seems to have been made to ascertain

whether anything can be recovered from this attorney, much less, to recover it.

3. The account is further defective and unjust, in that it shows an unexplained, and apparently unauthorized, use of the fund to pay taxes and interest. The plaintiff always had other property, and the will gave the executor no right or power to pay taxes out of this fund. But if he could do this, he clearly was bound to pay at once, and not subject the fund to a charge for interest.

4. The investment in a savings bank is unauthorized. It was not made within the terms of the will, and ought not to bind the plaintiff.

*Colwell & Colt*, for the respondent.

*February* 28, 1880. DURFEE, C. J. This is a suit in equity brought by Harris I. Carpenter, as legatee or *cestui que trust* under the will of his grandfather, the late Earl Carpenter, against Charles E. Carpenter, surviving executor of the will, for an account. The clause of the will under which the complainant makes his claim, directs the executors, within two years after the death of the testator, to invest the sum of $5,000 " in such stocks or other productive property as they may deem advisable, in their names as executors," and in the same manner to invest the income and profits, not required for the maintenance and education of the complainant, and the fund so created to pay over to the complainant on his attaining the age of twenty-five years. The will named the defendant and one David C. Anthony, executors. The testator died February 10, 1863. His will was admitted to probate, and the defendant and Anthony accepted the appointment as executors and qualified. The complainant attained the age of twenty-five years November 6, 1878. The bill alleges that the defendant refuses to account or to pay over the fund unless the complainant will accept in full satisfaction of his claim the sum of about $3,000 deposited in a savings bank, which he declines to do. The bill also alleges that the defendant pretends that he invested $5,000 as directed by the will in bonds which were stolen, and that he now has what he recovered, on deposit in said savings bank, and that he is only accountable for said deposit; whereas the bill alleges that the investment was not made in the names of the executors and did not constitute a trust

fund under the will. The bill prays that the defendant may account for all moneys held in trust for the complainant, pursuant to the will, and for an account thereof, and that the defendant may be decreed to pay the complainant said sum of $5,000 and such income as ought to have been received had the same been duly invested, and all sums which may be found to be justly due to him.

The facts in regard to said sum of $5,000 are these. Within two years after the testator's death, to wit, January 23, 1865, the defendant and David C. Anthony opened an account on their book with the complainant, in which they charged themselves as trustees under the will, to his credit with $5,000, which on the same day appears by the account to have been invested by them in three one thousand dollar United States coupon bonds, bearing interest at the rate of $7\frac{3}{10}$ per cent., being numbered 41181, 41587, 41588, and two one thousand dollar coupon bonds of the State of Rhode Island, bearing six per cent. interest and being numbered 692 and 734. Having purchased these bonds for the trust, the executors sealed them up in an envelope superscribed : " Investment of five thousand dollars for Harris Irving Carpenter, January twenty-third, 1865," and locked them, so sealed, in a tin box, which they deposited in the vault of the Traders' Bank in the city of Providence. Between Saturday, February 11, and Monday, February 13, 1865, the vault of this bank was entered by burglars and robbed of a large amount of property, among which were the bonds aforesaid. Efforts were made to recover the bonds, but without success. Eleven months after the robbery, no clue having been obtained, the executors closed the account on their book. Subsequently the executors, by giving heavy indemnity bonds, procured an issue of other United States bonds in place of the United States bonds which had been stolen ; but unfortunately the agent whom they employed in procuring them, and whom they believed to be trustworthy, he being an employee in the United States Treasury Department, was dishonest and converted them to his own use, and they were able to recover of him only a portion of the proceeds, being the moneys which, with the interest accruing, constitute the deposit in the savings bank.

The complainant contends that the trust was never duly con-

stituted, and that he is therefore entitled to $5,000, with interest, or such profit as it would have earned if duly invested. He contends that the trust was not constituted because the executors did not invest the moneys "in their names," as directed by the will. He argues that they should have bought bank or railroad stocks, or other corporate stocks or property which is conveyed by written transfer, and should have had it transferred by such transfer into their names; or, if they bought State or United States bonds, that they should have had them registered in their names, and that if they had done so the loss would not have occurred. We suppose there can be no doubt that if they had done so they would have done right. But the question is, Did they, in doing as they did, do wrong? Regarding the question as a question of due care, we cannot say that they were so careless that they ought to make good the loss, especially when we consider that the loss occurred in 1865, before the practice of investing in registered bonds had begun to be as common as it is now. Moreover, the will itself authorizes the executors to invest in such stocks or other productive property *as they may deem advisable.* In the view of the court, the real question, and it is the question which has been mainly argued for the complainant, is, Did the executors invest "in their names" as directed by the will? What do the words "in their names" mean, as used in the will? Is it true, as the complainant contends, that, to invest in his own name, a man must take by written transfer or record? We think this is to give the phrase too literal a rendering. "Name" is a word of various meaning. A man's name is the synonym of his power and personality. It is often put metaphorically for the man himself. Thus a man is said to bring honor or dishonor on his name when he performs a strikingly good or bad action. An agent is said to buy in the name of his principal when he buys for him, declaring his agency, whether he buys with or without a written transfer. A merchant is said to do business in his own name when he buys and sells avowedly for himself. A man is said to hold his property in his own name when he holds it manifestly as his own, though he may have no written insignia of ownership, as a farmer holds the cattle of his own raising, or the farm which he inherited from his ancestors. And so we think a man invests in his own name when he invests openly for

himself, though he only receives the investment by manual delivery; we think this is the meaning of the will. The testator intended to have $5,000 invested by the executors in property which they were to hold, distinguished from the assets, as a trust for the complainant. The executors, therefore, invested the $5,000 " in their names " when they bought the bonds and designated them for the trust in an account which they opened in their names as trustees for the complainant.

To see a thing as it is, we must sometimes look at it from different points of view. Let us suppose the bonds had never been lost, and that the investment continued to be made in them and other such bonds, and proved to be highly profitable. Could the executors in that event have supported a claim that the $5,000 had not been invested "in their names," and that they were therefore only accountable for it with interest at six per cent. ? Or again, suppose the complainant had died before attaining the age of twenty-five years, bequeathing to his mother whatever the executors had invested " in their names " for him under the will of his grandfather. Can there be any question that such a bequest would have carried the bonds if not lost? In both cases we think it would be decided without hesitation that the executors had duly established the trust by investing the $5,000 in their names. And, in the case at bar, we also think the trust must be held to have been established in the same manner.

The complainant contends that if the trust was constituted, the defendant is nevertheless liable for his subsequent mismanagement of it. He contends that the trustees did not use due care in making the deposit ; that they ought to have adopted some means of identifying the bonds and rendering them valueless to the thief, and that they were acting beyond the scope of their power when they authorized an agent to receive the new bonds in a form that permitted and invited a second theft. He contends that for these reasons the loss ought to be made good by the defendant. We think, however, that the trustees used as much care as prudent men ordinarily use in their own concerns, and that is all that was required of them. It is easy for the complainant to be wiser than the trustees after the event ; but it is doubtful if, before it, he would have been either wiser or more careful. " In regard to the preservation and care of trust prop-

erty," says Story in his Commentaries on Equity Jurisprudence, " it has been said, that a trustee is to keep it as he keeps his own. And therefore if he is robbed of money belonging to his *cestui que trust*, without his own default or negligence, he will not be chargeable. . . . . The rule in all cases of this sort is, that when a trustee acts by other hands, either from necessity or conformably to the common usage of mankind, he is not to be made answerable for losses. 2 Story Eq. Juris. § 1269 ; Perry on Trusts, §§ 404, 441 ; Lewin on Trusts, 224, 260, 6th ed. London ; *Litchfield* v. *White*, 7 N. Y. 438.

The complainant also contends that investment in a savings bank was not authorized by the will. We are, however, of the opinion that a deposit in a dividend paying savings bank may be regarded as " productive property."

A decree may be entered referring the cause to a master to take the account, the trust to be treated as duly established. Other matters in regard to the management of the trust which have been alluded to will come up more properly in taking the account or on the master's report.          *Decree accordingly.*